IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANNETTE TORRES and | : | CIVIL ACTION |
| PATRICK BOYLE, | : | No. 12-0176 |
|     Plaintiffs, | : | |
| | : | |
|     v. | : | |
| | : | |
| CITY OF PHILADELPHIA, | : | |
| ROBERT DEBLASIS, | : | |
| ANTHONY LASALLE, and | : | |
| ALLEN CLARK | : | |
|     Defendants. | : | |

## MEMORANDUM

November 14, 2012                                                            ANITA B. BRODY, J.

Plaintiffs Annette Torres and Patrick Boyle, both police officers in the Philadelphia Police Department, bring suit against three of their supervisors, Sgt. Robert Deblasis, Lt. Anthony LaSalle, and Capt. Allen Clark. In their Amended Complaint, Plaintiffs allege retaliation in violation of the First Amendment (Count I), racial discrimination under the Equal Protection Clause (Count II), violations of Title VII (Counts IV and VI), and violations of the Pennsylvania Human Relations Act (PHRA) (Counts V and VII). Plaintiffs also allege municipal liability against the City of Philadelphia (Count III). Before me now is Defendants' Partial

Motion to Dismiss, which asks me to dismiss Counts I, III, IV, and VII.[1] For the reasons stated below, I will grant the motion in part and deny in part.

**I. FACTUAL BACKGROUND**[2]

Torres, a Hispanic female, was hired by the Philadelphia Police Department in March of 2008. In October of 2008, she began a romantic relationship with and was soon engaged to Boyle, a white male who had been working for the Police Department since November 2003. Both Boyle and Torres worked in the 9th Police District as police officers. On or about November 2, 2010, Torres was assigned to work under Officer Dunbar, a black female whom Plaintiffs allege was known to be difficult and racist toward whites. Dunbar told Torres that she had been assigned to work for her because Torres "needed to be retrained." Dunbar told Torres that Sgt. Deblasis had made the assignment, despite the fact that he was not Torres' direct supervisor. Torres immediately confronted Deblasis and asked whether there was a problem with her

---

[1] The somewhat complicated procedural history—which determines which issues are presently before the court—warrants explanation. On April 12, 2012, Plaintiffs filed an amended complaint (ECF No. 6). Defendants filed a motion to dismiss on April 18, 2012 (ECF No. 7), which raised challenges to most of the claims in the amended complaint but did not challenge Torres' racial discrimination claim under the Equal Protection Clause (Count II), or Torres' employment discrimination claims under Title VII and the PHRA (Counts IV and V). On June 1, 2012, I issued an order dismissing Defendants' motion without prejudice and allowing them to re-file, "limited to the issues raised" in the April 18 motion to dismiss (ECF No. 14). Seven days later, Defendants filed their instant Partial Motion to Dismiss Plaintiffs' Amended Complaint (ECF No. 17), this time raising challenges to all the claims in the Plaintiffs' complaint, including Counts II, IV, and V. In response, Plaintiffs filed a Motion for Contempt (ECF No. 19) asking the court to strike those portions of the Defendants' motion that went beyond the scope of their original motion, in contravention of the court's June 1 order. On August 3, 2012, I agreed with the Plaintiffs and ordered that the challenges to Counts II, IV, and V be stricken from Defendants' motion (ECF No. 24). Therefore, in ruling on the present motion, I will disregard Defendants' challenges to Torres' racial discrimination and employment discrimination claims.

[2] When deciding a motion to dismiss under Rule 12(b)(6), a court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

training. Deblasis became "irate" and yelled at her for going home sick on one tour over a year earlier and for wearing a short-sleeved uniform to work. At least two other white males were wearing short-sleeved uniforms that day, but were not reprimanded. When Torres tried to walk away, Deblasis blocked her exit from the room and shoved papers in her face. In the amended complaint, Torres provides examples of other officers who have been disciplined in the past for blocking the egress of another officer. Am. Compl. ¶ 19.

Torres reported Deblasis' behavior to Sgt. Dennis Gallagher, her direct supervisor, and to Captain Allen Clark. Clark told her the incident would be investigated by Lt. LaSalle. Torres also complained to the internal Police EEO Unit, but was told that it was "not an EEO matter." LaSalle soon took a statement from Torres, and the investigation continued internally at the District for five weeks. After taking her statement, LaSalle issued a "counseling memo" reprimanding Torres for insubordination for complaining about her assignment to Deblasis rather than her direct supervisor.

After Torres' complaints about Deblasis' behavior, Gallagher, Clark, and Deblasis began showing up at Torres' routine traffic stops, something they had never done before. During the entire investigation, Torres and Deblasis were not separated, and Torres remained under his supervision.

In early January 2011, Deblasis' car was egged while parked at his house, and he accused Torres and Boyle of committing the act. As a result of the allegation, Clark immediately detailed Torres and Boyle to the 22nd District. Soon, two other officers admitted that they were responsible for the egging, and Torres and Boyle were reinstated at the 9th District. An internal investigation completed in May found that Deblasis' allegation against Boyle and Torres for the egging was not sustained. Deblasis was not disciplined for making false statements. Torres and

Boyle filed an EECO complaint on January 31, 2011, and filed this federal lawsuit on January 17, 2012.

## II. LEGAL STANDARD

Defendants bring a motion to dismiss under Federal Rules of Civil Procedure 12(b)(6). Under Rule 12(b)(6), a court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir.2006). This "assumption of truth" is "inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must allege facts sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

## III. DISCUSSION

### A. First Amendment Retaliation (Count I)

Torres claims that she suffered retaliation in violation of the First Amendment, alleging that the failure to discipline Deblasis, his harassment of her during her traffic stops, and his false accusation against her, among other things, constituted unconstitutional retaliation for her complaints about his behavior on November 2, 2010.

"A public employee has a constitutional right to speak on matters of public concern without fear of retaliation." *Baldassare v. New Jersey*, 250 F.3d 188, 194 (3d Cir.2001). "While

the government's role as employer…gives it a freer hand in regulating the speech of its employees than it has in regulating the speech of the public at large, this hand cannot act with impunity." *Id*. (quoting *Waters v. Churchill*, 511 U.S. 661, 671 (1994)). The Third Circuit has specified a clear methodology for evaluating a public employee's retaliation claim for engaging in protected activity:

> First, plaintiff must establish the activity in question was protected. For this purpose, the speech must involve a matter of public concern. Once this threshold is met, plaintiff must demonstrate his interest in the speech outweighs the state's countervailing interest as an employer in promoting the efficiency of the public services it provides through its employees. These determinations are questions of law for the court.
>
> If these criteria are established, a plaintiff must then show the protected activity was a substantial or motivating factor in the alleged retaliatory action. Lastly, the public employer can rebut the claim by demonstrating it would have reached the same decision…even in the absence of the protected conduct. The second and third stages of this analysis present questions for the fact finder.

*Baldassare*, 250 F.3d at 195 (citations and quotations omitted).

The threshold question is whether Torres' speech was on a matter of public concern and thus constituted protected activity. Whether a public employee's petition relates to a matter of public concern "will depend on the content, form, and context of the petition, as revealed by the whole record." *Borough of Duryea, Pa. v. Guarnieri,* 131 S.Ct. 2488 (2011) (internal quotation marks omitted). In *City of San Diego, Cal. v. Roe*, 543 U.S. 77, 83-84 (2004), the Supreme Court explained the "public concern" doctrine:

> Although the boundaries of the public concern test are not well defined, *Connick* [*v. Meyers*, 461 U.S. 138 (1983)] provides some guidance. It directs courts to examine the "content, form, and context of a given statement, as revealed by the whole record" in assessing whether an employee's speech addresses a matter of public concern. *Id.,* at 146-147. In addition, it notes that the standard for determining whether expression is of public concern is the same standard used to determine whether a common-law action for invasion of privacy is present. *Id.,* at 143, n. 5. That standard is established by our decisions in *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469 (1975), and *Time, Inc. v. Hill,* 385 U.S. 374, 387-388 (1967). These cases make clear that public concern is

something that is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public at the time of publication.

The Third Circuit has held that racial and sexual harassment are matters of "public concern." *Azzaro v. Cnty. of Allegheny*, 110 F.3d 968 (3d Cir. 1997). In the *Azzaro* case, the court did not require that the plaintiff allege or prove a "systemic problem" or wider pattern of discrimination. But the court emphasized that the case involved an elected official or his direct subordinate and that it was not "a complaint about an isolated incident…on the part of a non-supervisory co-worker." *Id.* at 978 n. 4. Other courts in the Circuit have seized on those distinctions to find that public employees' complaints about personal discrimination are not matters of public concern when, unlike *Azzaro*, they do not involve elected officials, there is no claim of a wider pattern of inappropriate conduct, the complaint is only about an individual's own abuse and mistreatment, and the conduct was limited in scope and duration. *See, e.g., Middleton v. Deblasis*, 844 F.Supp.2d 556, 565 (E.D. Pa. 2011); *Zugarek v. Southern Tioga Sch. Dist.,* 214 F.Supp.2d 468, 475 (M.D. Pa. 2002); *Bell v. City of Phila.*, 275 F. App'x 157, 159 (3d Cir. 2008); *Miles v. City of Phila.*, No. 11-4040, 2011 WL 4389601, *4-5 (E.D. Pa. Sept. 21, 2011).

Torres alleges that her report of Deblasis' behavior to Gallagher and Clark, as well as her complaint to the internal EEO unit, were protected activities because they related to a matter of public concern, namely, racial, national origin, and/or gender discrimination. Torres cites to a magistrate judge's report and recommendation (but labels it a Third Circuit opinion) in *Hartley v. Pocono Mt. Reg'l Police Dep't*, No. 04-2045, 2006 WL 4389589 (M.D. Pa. May 17, 2006) to support her claim that speech relating to personal discrimination is always a matter of public concern. That opinion, denying summary judgment against the plaintiff, is inapposite. First, the plaintiff in that case alleged *several* instances of purported discrimination that she suffered while

6

employed as a police officer. What's more, her complaints concerned her belief of systematic sexual harassment and discrimination at the police department. By contrast, Torres' speech complained of only one discrete incident and did not make a claim of systematic discrimination.[3]

It is not enough that *now*, in her opposition to the motion to dismiss, Torres alleges a wider pattern of systematic discrimination. The only relevant question is whether the speech for which she allegedly suffered retaliation—her complaint about Deblasis' behavior—was itself speech relating to a public concern. Torres has failed to demonstrate why her complaint was more like the speech in *Azzaro* than the speech in *Middleton* and *Miles*. Indeed, the speech in *Miles* involved more sustained and serious allegations, including complaints about at least three incidents of overt sexual harassment. Likewise, *Middleton* involved allegations of offensive comments stretching over a two-year period about the plaintiff's religion. In both of those cases, however, the courts held that the plaintiffs were not speaking on matters of public concern, finding that the plaintiffs' speech concerned individual treatment that did not involve elected officials and that was limited in scope and duration. As a result, both courts dismissed the First Amendment retaliation claims.

Similarly, Torres' speech concerned one specific and limited incident: Deblasis' reprimand on November 2, 2010. Indeed, there is no evidence that Torres even raised a claim of

---

[3] Similarly, Torres' citations to other cases finding that speech referring to public officials' malfeasance or disclosing "corruption, fraud, and illegality" constituted matters of public concern are not relevant to the question whether Torres' speech in this case was protected activity. Her citation of *Swineford v. Snyder County Pa.*, 15 F.3d 1258 (3d Cir. 1994) is even less relevant. In that case, a clerk in the county commissioner's office made public statements alleging electoral malfeasance. The court noted that "whether County officials were discharging their governmental responsibilities is speech falling squarely within the core public speech delineated in *Connick*." *Id.* at 1271 (internal citations omitted). By contrast, Torres' complaints had nothing to do with whether public officials were engaged in fraud or malfeasance, or performing their core responsibilities.

racial or gender discrimination in her complaints about Deblasis; rather, she describes only that she "reported Sgt. Deblasis's inappropriate comments, behavior and unwelcomed physical contact." Pls.' Resp. at *7.

Accordingly, I find that Torres' speech did not involve a matter of public concern. As such, her First Amendment retaliation claim is dismissed.

### B. Monell Municipal Liability (Count III)

Plaintiffs seek to hold the City of Philadelphia liable under 42 U.S.C. § 1983 for the alleged constitutional violations committed by Defendants Deblasis, LaSalle, and Clark. Plaintiffs' allege that the City's policy for the police department's disciplinary procedure, articulated in Police Directive 79, is discriminatorily or arbitrarily applied.[4] Plaintiffs point to two police officers who received official reprimand for blocking the egress of a coworker—the same conduct Torres accuses Deblasis of doing—to argue that the Directive is applied in a discriminatory or arbitrary manner, because Deblasis was not punished.

"A municipality may not be held liable under § 1983 for the constitutional torts of its employees by virtue of *respondeat superior*. Rather, a municipality may be held liable for the conduct of an individual employee or officer only when that conduct implements an official policy or practice." *Hill v. Borough of Kutztown*, 455 F.3d 225, 245 (3d Cir. 2006), *citing Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690 (1978). There are three circumstances in which an individual "implements official policy or practice," thereby rendering the municipality liable for the individual's actions:

> (1) the individual acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity, (2) the individual himself has final policy-making authority such that his conduct represents official policy, or (3) a final

---

[4] Plaintiffs cite to Directive 79 in their Opposition memo, but failed to include a copy of the Directive in its filings.

policy-maker renders the individual's conduct official for liability purposes by having delegated to him authority to act or speak for the government, or by ratifying the conduct or speech after it has occurred.

*Kutztown*, at 245.

Plaintiffs base their claim for *Monell* liability on the first theory, alleging that the City has a policy or custom of applying its disciplinary procedures arbitrarily and discriminatorily, and of failing to properly supervise or train the Defendants in "civil rights, employment laws, and to the proper use of the City's disciplinary rules." Am. Compl. ¶ 51. That Deblasis and the other defendants faced no disciplinary actions for their behavior supports Plaintiffs' claim. *See Middleton v.* Deblasis, 844 F.Supp.2d 556, 567 (E.D. Pa. 2011). The Supreme Court has recognized that a municipality can be liable for civil rights violations if the failure to train its employees amounts to "deliberate indifference to the rights" of plaintiffs, *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). By pointing to the varied application of disciplinary procedures and alleging a failure to train its employees, Plaintiffs have sufficiently plead *Monell* liability to survive a motion to dismiss. Defendants' motion to dismiss Count III of the Complaint is denied.

### C. Boyle's Hostile Work Environment Claims under Title VII and PHRA (Counts VI and VII)

In Count VI of the Complaint, Plaintiff Boyle alleges that he suffered employment discrimination and a hostile work environment, in violation of Title VII and the PHRA. To show that an employer's actions created a hostile work environment, a plaintiff must show (i) that he suffered intentional discrimination because of his race; (ii) the discrimination was severe or pervasive; (iii) the discrimination detrimentally affected him; (iv) the discrimination would detrimentally affect a reasonable person of the same race; and (v) there is a basis for employer

9

liability. *See Andreoli v. Gates*, 482 F.3d 641, 643 (3d. Cir. 2007). PHRA claims are evaluated under the same legal standard. *Weston v. Penn*, 251 F.3d 420, 426 n. 3 (3d Cir. 2001).

Boyle's hostile work environment is based on two actions: (i) Deblasis accused Boyle of egging his car, and (ii) neither Deblasis nor LaSalle were disciplined for making a false statement regarding the egging accusation, following the IAB "not sustained" finding. Am. Compt. ¶ 82. Defendants charge that Boyle failed to allege pervasive or sufficiently severe discrimination to state a claim for hostile work environment.[5]

In *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 270 (2001), the Supreme Court established a framework for analyzing the "severe and pervasive prong":

> [H]arassment is actionable under Title VII only if it is so severe or pervasive as to alter the conditions of the victim's employment and create an abusive working environment. Workplace conduct is not measured in isolation; instead, whether an environment is sufficiently hostile or abusive must be judged by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

(internal citations and quotation marks omitted).

Under this standard, Boyle has failed to state a hostile work environment claim. He alleges only one direct act against him—the false accusation—which was hardly so severe as to create an abusive working environment. Indeed, "isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). *See also Caver v. City of Trenton*, 420 F.3d 243, 262 (3d Cir. 2005) (isolated incidents that are not extremely serious are not sufficient to sustain a hostile work environment claim). Because neither of the two incidents on

---

[5] Count VI of Plaintiffs' complaint also includes a more general Title VII employment discrimination charge. Defendants did not directly challenge this portion of Count VI, and therefore Boyle's general Title VII claim survives this motion to dismiss.

which Boyle bases his hostile work environment claim are "extremely serious," Count VI is dismissed with respect to the hostile work environment charge.

   D. **LaSalle**

Defendants seek to dismiss Lt. LaSalle from the case because Plaintiffs have not plead a plausible discrimination claim against him. To hold a supervisor individually liable under § 1983, a plaintiff must show that the individual participated in violating their rights, or that he directed others to violate them, or that he had knowledge of and acquiesced in his subordinates' violation. *Baker v. Monroe Tp.*, 50 F.3d 1186, 1190-91 (3d Cir. 1995). "While the defendant must play an 'affirmative part' in the alleged misconduct to be individually liability under Section 1983, non-feasance on the part of the defendant may be sufficient to constitute an affirmative role in the misconduct if the individual defendant in a supervisory role had actual knowledge of and acquiesced in his subordinate's violations of the plaintiff's rights." *Telepo v. Martin*, No. 08-2132, 2009 WL 2476498, *2 (M.D. Pa. Aug. 12, 2009) *aff'd*, 359 F. App'x 278 (3d Cir. 2009), *citing Baker*, 50 F.3d at 1191 n. 3. *See also Garbacik v. Janson*, 111 Fed. App'x. 91 (3d Cir. 2004) (discussing Courts of Appeals decisions finding § 1983 violations for nonfeasance).

LaSalle acted directly against the plaintiffs here when he gave Torres a "counseling memo"—a formal reprimand—for insubordination. *See* Pls.' Resp., Ex. D. Defendants argue that a reprimand like a counseling memo only constitutes an "adverse employment action" under Title VII and § 1983 when it has some tangible effect on the plaintiff's employment status, and that the memo here had no such effect. Plaintiff Torres suggests that the counseling memo was itself "unconstitutional," first because Torres apparently had not been insubordinate and second because it was in "close time proximity" to Torres' complaint about Deblasis' behavior.

Regardless of whether LaSalle's direct action render him liable under § 1983, Plaintiffs' claims against him can survive under the nonfeasance theory: His refusal to discipline Deblasis was itself a sufficiently affirmative act to render him liable under § 1983 because he had actual knowledge of and acquiesced in his subordinate's violations of Plaintiffs' rights. Because I am allowing the § 1983 and Title VII discrimination claims against Deblasis to move forward, so too must the claims against LaSalle survive this motion, as additional evidence may show that LaSalle acquiesced in any discrimination conducted by Deblasis. I cannot say that there is no set of facts under which LaSalle could be liable under § 1983. Defendants' motion to dismiss LaSalle as a defendant is denied.

**IV. Conclusion**

For the reasons stated above, I will grant Defendants' motion to dismiss Plaintiffs' First Amendment retaliation claim and Plaintiff Boyle's hostile work environment claim. The remaining claims may be challenged at a later stage of litigation.

/s Anita B. Brody
_____
ANITA B. BRODY, J.