IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANNETTE TORRES, et al., | : | |
|     Plaintiffs, | : | |
| | : | CIVIL ACTION |
| v. | : | NO. 12-176 |
| | : | |
| SGT. ROBERT DEBLASIS, et al., | : | |
|     Defendants. | : | |

**August _1___, 2013**                                                                                   **Anita B. Brody, J.**

## MEMORANDUM

Plaintiffs Annette Torres and Patrick Boyle bring suit against Defendants Robert Deblasis, Anthony LaSalle, Alan Clarke,[1] and the City of Philadelphia. Torres and Boyle allege that Defendants subject them to employment discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Stat. Ann. § 951 *et seq.*, and 42 U.S.C. § 1983.[2] Specifically, Torres alleges that she was subject to disparate treatment, retaliation and a hostile work environment because of her race, national origin, and gender. Boyle alleges that he has been subject to

---

[1] Defendant Alan Clarke is incorrectly identified as "Allen Clark" in Torres' and Boyle's Second Amended Complaint.

[2] The legal standards for analyzing Title VII and PHRA claims "are the same for purposes of determining [a] summary judgment motion." *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 409 (3d Cir. 1999). Additionally, the same legal standards for analyzing Title VII apply to Equal Protection discrimination claims brought pursuant to § 1983. *Stewart v. Rutgers, The State Univ.*, 120 F.3d 426, 432 (3d Cir. 1997) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 n. 1 (1993)). With the exception of Plaintiffs' municipal liability claim under § 1983, this opinion will only reference Title VII because any result reached under this statute applies equally to Torres' Equal Protection discrimination claim and Plaintiffs' PHRA claims.

1

disparate treatment because of his interracial relationship with Torres.[3] I exercise federal question jurisdiction over Torres' and Boyle's Title VII and § 1983 claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over Torres' and Boyle's PHRA claims pursuant to 28 U.S.C. § 1367. Defendants have filed a motion for summary judgment. For the reasons set forth below, I will grant Defendants' motion for summary judgment.

## I. BACKGROUND[4]

Plaintiffs Annette Torres and Patrick Boyle are police officers employed by the Philadelphia Police Department ("PPD"). Both Torres and Boyle have been assigned to the 9th District for their entire careers with the PPD. Torres and Boyle have been in a romantic relationship together since the middle of 2008. Defendant Robert Deblasis is a white male sergeant in the PPD who has been assigned to the 9th District since February 2004. Defendant Deblasis was not Torres' and Boyle's direct supervisor. However, Deblasis did supervise Torres and Boyle approximately six times per month throughout 2010. Defendant Anthony LaSalle is a white male lieutenant in the PPD who has been assigned to the 9th District since February 2010. At all times relevant to this suit, LaSalle was the direct supervisor of Deblasis. Defendant Alan Clarke is an African American male captain in the PPD who was assigned to the 9th District in October 2010, for a period of five to six months. As captain of the 9th District, Clarke had supervisory authority over Torres, Boyle, Deblasis, and LaSalle. Between November 2010 and January 2011, several allegedly discriminatory incidents occurred.

---

[3] As discussed infra, Boyle cannot succeed on his Title VII and PHRA claims because he has not suffered an adverse employment action. Therefore, I need not address whether Boyle's claims are legally cognizable.

[4] For purposes of summary judgment, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in [that party's] favor." *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) (alteration in original) (internal quotation marks omitted).

2

**1. The November 2, 2010 Incident**

On November 2, 2010, the 9th District had a "heavy day," which means that police officers from all platoons, approximately twenty-five to thirty police officers, were all required to work at the same time. Deblasis was in charge of officer assignments for the day. Deblasis assigned Torres to work with veteran police officer Donna O'Day-Dunbar because it was his general practice on heavy days to assign veteran officers to work with new officers. Upon learning of her assignment at 3:30 p.m., Torres approached her direct supervisor, Sergeant Dennis Gallagher, and asked him to change her assignment. Gallagher had only been in the 9th District for two weeks, so he decided to discuss Torres' assignment with Deblasis before making a decision. Deblasis told Gallagher that he had previously given Torres an assignment that she did not like and Torres had decided to call out sick. Based on the information provided by Deblasis, Gallagher decided not to change Torres' assignment. Thereafter, Torres and O'Day-Dunbar went out on assignment together. While on assignment, O'Day-Dunbar told Torres that Deblasis had paired Torres with O'Day-Dunbar because he believed Torres needed to be retrained.

At approximately 7:30 p.m., Torres and O'Day-Dunbar returned to the 9th District headquarters. Torres approached Deblasis to ask him if he had a problem with her job performance. Deblasis yelled at and scolded Torres for leaving early when she was assigned to work with a veteran officer on a heavy day in 2009 and for wearing a short sleeve uniform when she was supposed to wear a long sleeve uniform the month before. Torres alleges that during this argument, Deblasis poked her in the face with a paper and chest bumped her.[5] During the incident, Torres told Deblasis, "I'm done with you." Defs.' Ex. 1 at 29:6-9. When Deblasis

---
[5] Deblasis denies making physical contact with Torres. He alleges that Torres yelled at him, pointed at him, put the palm of her hand up to his face, and then inadvertently brushed her arm against his patrol jacket as she was walking away.

informed Torres that she could be disciplined for insubordination, Torres responded, "[D]o what you want." Defs.' Ex. 13.

**2.  Deblasis' Request That Disciplinary Action Be Taken Against Torres**

On November 2, 2010, shortly after the incident, Deblasis submitted a memorandum to Clarke requesting that disciplinary action be taken against Torres for insubordination.  No disciplinary action was ever taken against Torres as a result of Deblasis' request.

**3.  Torres' Complaints Against Deblasis**

On November 2, 2010, after her argument with Deblasis, Torres went to see Gallagher to notify him of the incident.  Torres relayed the details of the argument to Gallagher.  Gallagher suggested that Torres could speak to LaSalle about the incident or file an Equal Employment Opportunity ("EEO") complaint.

On November 8, 2010, Torres went to the PPD EEO Unit.  Torres submitted to the EEO Unit an informal written statement.  In the statement, Torres recounted the details of the November 2, 2010 incident.

Torres never mentioned in either her verbal complaint to Gallagher or her written complaint that she believed Deblasis' conduct was discriminatory.  Nor did she mention the words race, national origin, or gender.

**4.  The Counseling Form**

Clarke ordered an investigation into the November 2, 2010 incident.  Clarke assigned LaSalle to conduct the investigation.  Lasalle interviewed Torres, Deblasis, Gallagher, and several police officers.  Although some officers had heard portions of the argument between Torres and Deblasis, no one had witnessed any physical contact between the two.  Gallagher told LaSalle that prior to the November 2, 2010 incident he had ordered Torres not to speak with

Deblasis about her assignment. Lasalle found Gallagher's statement to be credible. On November 27, 2010, LaSalle completed his investigation and submitted a memorandum suggesting that Torres should be disciplined for insubordination because she had ignored Gallagher's order and told Deblasis to "do what you got to do" when he informed her that she could be disciplined for insubordination. Defs.' Ex. 12 at ¶ 2. After receiving LaSalle's memorandum, Clarke decided not to discipline Deblasis or Torres because neither of their allegations of physical conduct could be corroborated by independent witnesses. Clarke did, however, direct LaSalle to issue Torres a counseling form.

On December 13, 2010, LaSalle issued Torres a counseling form for failing to follow Gallagher's order. The counseling form warned Torres that "[a]ny future insubordination may result in disciplinary action." Defs.' Ex. 17. Counseling forms are a PPD training tool meant to help officers improve their shortcomings. According to the PPD Directive 110, "The counseling forms are not disciplinary in nature nor is their issuance considered to be disciplinary in action." Defs.' Ex. 18. Accordingly, they are not placed in an employee's personnel file. A counseling form cannot result in any disciplinary action being taken against an employee such as a loss in pay, transfer, or suspension. Additionally, it cannot influence an employee's eligibility for promotions or raises. Torres acknowledges that the counseling memo had no effect on her job.

**5. Deblasis' Observation Of The Car Stop Torres Performed While On Duty**

Sometime in December 2010, Deblasis observed Torres and her partner conduct a routine car stop. During this observation, Deblasis did not get out of his car and only spoke with Torres' partner after the stop. Torres believes that Deblasis was following her. However, it is routine for supervisors within the 9th District to observe police officers in the field. On several occasions, supervisors have signed police officers' patrol activity logs while they are in the field.

**6. The Egging Incident**

On January 9, 2011, Deblasis noticed that his car had been egged. Deblasis reviewed his home security surveillance and noticed that, two days before the egging incident, someone in a dark colored Jeep Wrangler had circled his property for eleven minutes. Additionally, the surveillance video revealed that someone in a blue SUV had egged Deblasis' car. After watching the video footage, Deblasis drove by Torres' and Boyle's home. Deblasis observed three cars parked at their home: a black Jeep Wrangler, a dark-colored Jeep Cherokee, and a blue SUV, which he believed was the vehicle involved in the egging incident.

On January 11, 2011, Deblasis filed a civilian complaint with the PPD Internal Affairs Division ("IAD"), reporting that his car had been egged and that he believed that Torres and Boyle were the culprits. As a result of the IAD complaint being filed, Inspector Kachigan, Clarke's superior, temporarily transferred Torres and Boyle to the 22nd District. Their temporary transfer only lasted one day because police officers Jaqueline and Christopher Hyk confessed to egging Deblasis' car. On April 13, 2011, the IAD concluded its investigation and the allegations against Torres and Boyle were deemed "not sustained," which means that "[a] thorough investigation can neither prove nor disprove the allegation." Defs.' Ex. 22 at p. 13. No disciplinary action was taken against Torres or Boyle as a result of the egging incident, and the incident had no effect on either of their jobs.

**II. LEGAL STANDARD**

Summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law . . .

." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Id.*

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). After the moving party has met its initial burden, the nonmoving party must then "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. In ruling on a motion for summary judgment, the court must draw all inferences from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, the nonmoving party may not "rely merely upon bare assertions, conclusory allegations or suspicions" to support its claims. *Fireman's Ins. Co. of Newark, N.J. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982).

In essence, the inquiry at summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

### III.  DISCUSSION

#### A.  Disparate Treatment Claims

Both Torres and Boyle bring claims of disparate treatment against Defendants. In order to establish a prima facie case of disparate treatment, a plaintiff must establish that: "(1) s/he is a member of a protected class; (2) s/he was qualified for the position s/he sought to attain or retain; (3) s/he suffered an adverse employment action; and (4) the action occurred under circumstances

7

that could give rise to an inference of intentional discrimination." *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008). Defendants argue that Torres and Boyle cannot succeed on their disparate treatment claims because they did not suffer an adverse employment action.

In the context of a disparate treatment claim, "an adverse employment action is one which is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001) (internal quotation marks omitted). Put another way, an adverse employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 152-53 (3d Cir. 1999) (internal quotation marks omitted). Additionally, an adverse employment action may be found "[i]f an employer's act substantially decreases an employee's earning potential and causes significant disruption in his or her working conditions . . . ." *Id.* at 153.

Torres alleges that she was subject to the following adverse employment actions: (1) being confronted by Deblasis during the November 2, 2010 incident; (2) Deblasis' request that disciplinary action be taken against her; (3) receiving a counseling form; (4) Deblasis' observation of the car stop she performed while on duty; and (5) being wrongfully accused of egging Deblasis' car. Boyle alleges that he was subject to an adverse employment action when he was wrongfully accused of egging Deblasis' car. However, none of the actions identified by Torres or Boyle are adverse employment actions because they did not result in any change in employment status or benefits. Only two alleged adverse employment actions merit minimal discussion: the egging incident and the counseling form.

During the egging incident investigation, Torres and Boyle were transferred to the 22nd District for one day. While some transfers may constitute an adverse employment action, a transfer "involving no reduction in pay and no more than a minor change in working conditions," and that " does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action." *Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996). Torres and Boyle do not allege that their transfer reduced their pay or constituted any type of demotion. Moreover, Boyle acknowledges that the transfer was "simply an operation of the department," and was neither discriminatory nor retaliatory. Defs.' Ex. 2 at 31:15-32:9. There is no evidence that the one day transfer was materially adverse. At the conclusion of the investigation into the egging incident, the charges against Torres and Boyle were deemed not sustained and no disciplinary action was taken against. Thus, the egging incident was not an adverse employment action.

Throughout the alleged period of discrimination the only negative feedback that Torres received from the PPD was the counseling form. The counseling form stated that Torres had failed to follow Gallagher's order on November 2, 2010 that she not approach Deblasis to discuss what she viewed to be an unfavorable assignment. Furthermore, the counseling form warned Torres that "[a]ny future insubordination may result in disciplinary action." Defs.' Ex. 17. Torres acknowledges that the counseling form had no effect on her employment status or benefits. However, she argues that the counseling form is an adverse employment action because it could hypothetically alter an employee's compensation, terms, conditions, or privileges of employment.

The Third Circuit has held that two written reprimands, temporarily placed in an employee's personnel file for six months, were not adverse employment actions because they did

not "effect a material change in the terms or conditions of [the plaintiff's] employment." *Weston v. Pennsylvania*, 251 F.3d 420, 431 (3d Cir. 2001), *abrogated in part by Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 67 (2006). Here, Torres received a single counseling form. The PPD uses counseling forms as a tool for training employees and does not consider them to be disciplinary actions. Counseling forms are never placed in an employee's personnel file. Furthermore, they cannot result in any disciplinary action being taken against an employee such as a loss in pay, transfer, or suspension nor can they influence an employee's eligibility for promotions or raises. Torres admits that the counseling form did not materially change the terms and conditions of her employment. Thus, the counseling form is not an adverse employment action.

Neither Torres nor Boyle has suffered an adverse employment action. Therefore, I will grant Defendants' motion for summary judgment on Boyle's and Torres' disparate treatment claims.

**B. Retaliation Claims**

Torres alleges that she was retaliated against for her complaints about Deblasis' conduct during the November 2, 2010 incident. Title VII makes it unlawful "for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3. In order to establish a prima facie case of retaliation, a plaintiff must show that: (1) she engaged in a protected employee activity; (2) she suffered an adverse employment action either after or contemporaneous with the employee's protected activity; and

(3) a causal connection exists between the employee's protected activity and the employer's adverse action. *Marra v. Phila. Housing Auth.*, 497 F.3d 286, 300 (3d Cir. 2007).

Defendants argue that Torres cannot succeed on her retaliation claims because she did not engage in a protected activity. "A general complaint of unfair treatment is insufficient to establish protected activity under Title VII." *Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 135 (3d Cir. 2006). "[O]pposition to an illegal employment practice must identify the employer and the practice-if not specifically, at least by context." *Id.* In *Barber v. CSX Distribution Services*, 68 F.3d 694, 701-02 (3d Cir. 1995), the Third Circuit held that a letter sent to an employer that complained about unfair treatment in general, but did not specifically complain about age discrimination was not protected activity. "The letter . . . was too vague to constitute opposition to an unlawful employment practice of his employer because it neither 'explicitly [n]or implicitly' alleged that a protected characteristic was the basis for the adverse employment action." *Curay-Cramer*, 450 F.3d at 135 (quoting *Barber*, 68 F.3d at 702).

Immediately after the November 2, 2010 incident, Torres complained to Gallagher about Deblasis' conduct. Torres told Gallagher that Deblasis had yelled at her, poked her in the face with paper, and chest bumped her. Gallagher informed Torres that she could take her complaint to LaSalle or file an EEO complaint. On November 8, 2010, Torres went to the PPD EEO Unit. Torres did not submit an EEO complaint. Rather, she submitted an informal written statement to the EEO. The statement was a detailed account of the November 2, 2010. Torres alleges that both her verbal complaint to Gallagher and her informal written statement to the EEO Unit were protected activities. However, Torres' verbal and written complaints lack any indication that Torres believed the November 2, 2010 incident was the result of discrimination. Torres never told Gallagher nor stated in her written complaint that she believed Deblasis' conduct was

11

discriminatory. Nor did she mention the words race, national origin, or gender. All that can be gleaned from the complaints is that Torres believed that Deblasis had treated her unfairly. The complaints are devoid of any explanation for this unfair treatment. These vague complaints of unfair treatment do not constitute protected activity. Therefore, I will grant Defendants' motion for summary judgment on Torres' retaliation claims.

## C. Hostile Work Environment Claims

Torres alleges that she was subject to a hostile work environment. In order to establish a prima facie hostile work environment claim, Torres must demonstrate that: (1) she suffered intentional discrimination because of her membership in a protected class; (2) the discrimination was severe and pervasive; (3) the discrimination detrimentally affected her; (4) the discrimination would detrimentally affect a reasonable person of the same protected class in that position; and (5) *respondeat superior* liability exists. *Weston*, 251 F.3d at 426.

Defendants argue that Torres cannot succeed on her hostile work environment claims because she has not suffered severe and pervasive discrimination. To prove this second element, a plaintiff must show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment . . . ." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002) (internal quotation marks omitted). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (citation omitted) (internal quotation marks omitted). "[W]hether an environment is sufficiently hostile or abusive must be judged by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is

physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. " *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 270-71 (2001) (internal quotation marks omitted).

Torres alleges that the following actions amount to severe and pervasive discrimination: (1) being confronted by Deblasis during the November 2, 2010 incident; (2) Deblasis' request that disciplinary action be taken against her; (3) receiving a counseling form; (4) Deblasis' observation of the car stop she performed while on duty; and (5) being wrongfully accused of egging Deblasis' car. These isolated incidents are neither severe nor pervasive. There is no evidence that Torres was subject to an abusive working environment. Therefore, I will grant Defendants' motion for summary judgment on Torres' hostile work environment claims.

## D. Municipal Liability Claim Under § 1983

Torres and Boyle seek to hold Defendant City of Philadelphia liable under § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). "To establish liability under 42 U.S.C. § 1983, a plaintiff must show that the defendants, acting under color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused the complained of injury." *Elmore v. Cleary*, 399 F.3d 279, 281 (3d Cir. 2005). Torres and Boyle cannot succeed on their § 1983 claim against the City of Philadelphia because they have failed to demonstrate a violation of their constitutional or federal statutory rights. Therefore, I will grant Defendants' motion for summary judgment on Torres' and Boyle's municipal liability claim under § 1983.

## IV. CONCLUSION

For the reasons set forth above, I will grant Defendants' motion for summary judgment.

s/Anita B. Brody

_____
ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:     Copies **MAILED** on _____ to: